UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PATRICIA O,

                                              Plaintiff,

v.

KILOLO KIJAKAZI, Commissioner of
Social Security,

                                              Defendant.

Case No.:  21-cv-376-CAB-BGS

**REPORT AND
RECOMMENDATION TO REMAND
CASE TO SOCIAL SECURITY
ADMINISTRATION FOR FURTHER
PROCEEDINGS**

[ECF 21]

## I.    INTRODUCTION

Plaintiff Patricia O. ("Plaintiff" or "claimant") filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits under the Social Security Act, (ECF 1), and the Commissioner has filed the Administrative Record (ECF 14-19). Pursuant to the Court's Order, the parties have filed a Joint Motion for Judicial Review addressing both parties' positions. (ECF 19 (Court's briefing Order); ECF 21 (Joint Motion).)

Plaintiff seeks reversal of the final decision denying benefits and an order for the payment of benefits or, in the alternative that the Court remand the case for further administrative proceedings. Plaintiff argues the Administrative Law Judge ("ALJ") failed

to provide specific, clear and convincing reasons for rejecting Plaintiff's allegations regarding the severity of her symptoms. (ECF 21 at 4-17.[1]) The Commissioner argues that the ALJ provided numerous reasons for discounting Plaintiff's allegations regarding the severity of her symptoms. (ECF 21 at 19-25.)

The Honorable Cathy Ann Bencivengo has referred this matter to the undersigned on a report and recommendation basis. After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** the case be remanded to the Social Security Administration for further proceedings.

## II.   PROCEDURAL HISTORY

Plaintiff's application for disability benefits, alleging disability commencing on September 20, 2018, were denied initially on April 5, 2019 and on reconsideration on April 11, 2019. (AR 333-338 (initially); AR 339-345 (reconsideration).)[2] At Plaintiff's request, a hearing was held before an ALJ on April 7, 2020. (AR 177-217 (hearing transcript), 347-348 (request for hearing).) The ALJ issued an unfavorable decision on July 15, 2020. (AR 86-101.) Plaintiff's request for Appeals Council review was denied on January 12, 2021. (AR 1-7 (denial), 411-414 (request for review).)

## III.   ALJ DECISION

The decision explains the five-step evaluation process for determining whether an individual is eligible for disability benefits and then proceeds through steps one through five of the evaluation process. (AR 87-101.[3])

---

[1] Unless otherwise noted, the Court cites the CM/ECF electronic pagination for the parties' briefing and the Administrative Record pagination for cites to it.

[2] The ALJ decision explains that Plaintiff submitted a prior application alleging a March 6, 2016 onset date that was denied on September 18, 2018. (AR 87.) The ALJ noted the presumptions of non-disability absent a showing of changed circumstances. (AR 87.) The decision then finds there is evidence of changed circumstances. (AR 87.)

[3] Relevant portions of the decision, including discussion of the specific records the ALJ cited and relied on for the decision's findings, are discussed in greater detail below.

### A.     Step Two

After finding Plaintiff had not engaged in substantial gainful activity at step one, (AR 89), the ALJ addresses step two. (AR 89-93.) At step two, the ALJ determines whether a claimant has a "severe medically determinable physical or mental impairment . . . or combination of impairments that is severe." 20 C.F.R. § 1520(a)(4)(ii). The decision finds Plaintiff had the following medically determinable severe impairments: "retrolisthesis of L5-S1 with herniated nucleus pulposus (HNP) at L5-S1; patellofemoral Chondromalacia of the left knee; minor degenerative changes of the cervical spine; bradycardia; carotid bruit and mitral regurgitation." (AR 89.)

The ALJ then notes Plaintiff "has also alleged disability due to anxiety disorder, not otherwise specified; a depressive disorder, not otherwise specified; insomnia; hypertension and urinary tract infection." (AR 89.) The decision identifies blood pressure readings in three medical records in 2019 and discusses two medical records in which Plaintiff's hypertension is described as stable. (AR 90.) The ALJ also acknowledges Plaintiff's insomnia diagnosis in the May 1, 2018 record and that it was described as stable. (AR 90.)

The decision then addresses whether Plaintiff's mental impairments are severe or non-severe and addresses the four functional areas under the "paragraph B" criteria.[4] (AR 90-93.) The ALJ cites a May 1, 2018 follow-up with Plaintiff's cardiologist, in which the ALJ indicates Plaintiff denied anxiety or depression and had normal mood and affect. (AR 90.) The ALJ additionally notes another record, a November 27, 2018 appointment with an orthopedic surgeon, indicating Plaintiff had normal mood and affect. (AR 90.)

The ALJ then summarizes Plaintiff's consultive psychiatric evaluation and an initial mental health evaluation by a licensed clinical social worker. (AR 90-91.) As to both evaluations, the ALJ notes she was diagnosed with unspecified depressive disorder

---

[4] 20 C.F.R. Part 404,Subpart P, Appendix. 1.

and unspecified anxiety. (AR 90-91.) As to the psychiatric evaluation, the decision summarizes her mild limitations in a number of activities including, two-step instructions, interacting with others, concentration and attention, accepting instructions, and work attendance. (AR 91.) As to the initial mental health evaluation, the ALJ indicates that Plaintiff reported that following her boyfriend committing suicide in December 2019, she was unable to sleep, was throwing up when she ate, lacked energy, and was easily triggered by what other people say. (AR 91.) The ALJ also explains that she was recommended to receive psychotherapy 1-2 times per month for six months. (AR 91.) The ALJ then found, based on this evaluation, that these impairments would not last twelve months or more under 20 CFR § 404.1505 and § 416.905. (AR 91.) The ALJ concluded that Plaintiff's anxiety and depressive disorders were non-severe. (AR 92.)

The decision then addresses the "paragraph B" criteria. (AR 922-93.) The ALJ found Plaintiff had only mild limitations in the four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing herself. (AR 92.) In conducting this analysis, the ALJ discussed Plaintiff's Adult Function Reports and the daily activities she reported engaging in as well as Plaintiff's reports during her psychiatric evaluation. (AR 92.)

The ALJ then explains that this "paragraph B criteria" analysis is only used to rate the severity of mental impairments for steps two and three and not a residual functional capacity ("RFC"). The ALJ concludes that Plaintiff's anxiety disorder, depressive disorder, insomnia, hypertension, and urinary tract infections are not severe impairments. (AR 93.)

### B.    Step Three

At step three the ALJ considers whether the claimant's impairments meet or equal one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings. *See* §§ 404.1520(a)(4)(iii),

4

404.1520(d), 404.1525, 404.1526. The ALJ found Plaintiff did not meet a listing at step three. (AR 93.)

### C.    Residual Functional Capacity

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e). A claimant's RFC is the "most [they] can still do despite [their] limitations" taking into account all medically determinable impairments, including "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)(2). The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five). §§ 404.1520(e)-(f), 404.1545(a)(5). The ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She is able to lift, carry, push, and pull 20 pounds occasionally and up to 10 pounds frequently. She can stand and/or walk 6 hours and sit 6 hours in an 8 hour workday with normal breaks. She could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch and crawl. Additionally, she would need to avoid even moderate exposure to vibrations and she would need to avoid all exposure to workplace hazards, such as unprotected heights, dangerous or fast-moving machinery, etc.

(AR 93.)

The decision then explains that in making this finding, the ALJ "has considered all Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered the medical opinions and prior medical findings." (AR 93 (citing 20 C.F.R. § 404.1529 and 416.929, SSR 16-3p, 20 C.F.R § 404.1520c, and § 416.920c)

The ALJ then explains the two-step process to evaluate Plaintiff's symptoms. (AR 93-94.) The decision identifies the first step as determining if an underlying impairment

could reasonably be expected to produce Plaintiff's symptoms. (AR 93-94.) The ALJ describes the second step as an evaluation of the intensity, persistence and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's work-related activities. (AR 94) The ALJ notes that whenever Plaintiff's statements "about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (AR 94.)

The ALJ then summarizes the following medical appointments: May 1, 2018 follow-up with her treating cardiologist; November 27, 2018 follow-up with an orthopedic surgeon, Dr. Kimball; April 18, 2019 evaluation and September 19, 2019 follow-up with a different orthopedic surgeon, Dr. Abitbol; May 15, 2019 pain management physician visit; and August 30, 2019 visit with another orthopedic surgeon, Dr. Scalone. (AR 94-96.) The ALJ also notes Plaintiff underwent two medial branch block lumbar injections that reportedly only provided relief for a couple of hours. (AR 96.) These were followed by two radiofrequency ablations (RFAs) that provided some brief pain relief. (AR 96.)

The ALJ then summarizes Plaintiff's February 26, 2019 and April 30, 2019 Adult Function Reports as indicating she independently performs personal hygiene activities, prepares simple meals, keeps her room clean, does her laundry, uses public transportation, shops for groceries, attends church and a food bank, and interacts with family, friends, neighbors, and authority figures. (AR 96.) The summary acknowledges she reports she cannot handle a savings or checking account because of lack of concentration and uses a knee brace, hand brace, and glasses. (AR 96.) The ALJ states that his consideration of these reports includes "whether the information contained in the reports are consistent with other evidence in the record, and any other factors that tend to support or refute the information and opinions provided." (AR 96-97.)

The ALJ then states, "[i]n determining the claimant's residual functional capacity, the undersigned has also considered the allegations of her symptoms and functional limitations." (AR 97.) "However, to the extent that it is alleged that the claimant cannot perform work at the residual functional capacity as recited above, the Administrative Law Judge finds those allegations are not totally consistent with the evidence for the following specific and legitimate reasons."[5] (AR 97.) The ALJ then lists nine reasons that are discussed further below (section V.B). (AR 97-98.) The ALJ then returns to the second step of the two-step process for evaluating a claimant's symptoms and "finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 98.)

The ALJ then summarizes and agrees with medical consultant opinions finding Plaintiff can perform work at the light level of activity with the additional limitations noted in the RFC above and that she lacks a severe mental impairment. (AR 98.) In doing so, the ALJ notes the "exertional and nonexertional limits are also consistent with the claimant's course of treatment that has been mostly conservative." (AR 98-99.)

The ALJ concludes that "[t]he objective medical evidence and the claimant's acknowledged activities are consistent with the ability to perform activities at the above stated residual functional capacity levels and inconsistent with the inability to do any work activity." (AR 99.)

---

[5] The ALJ decision refers to Plaintiff's "allegations of symptoms" or more generally "allegations" rather than "testimony." Although, as discussed in more depth below, it is not always clear what allegations the ALJ intends to encompass in these phrases the Court presumes the ALJ is including more than Plaintiff's testimony given these phrases appear to include issues unaddressed at Plaintiff's hearing.

21-cv-376-CAB-BGS

Relying on testimony from a vocational expert, the ALJ determined at step four that Plaintiff could do her past relevant work as a cashier. (AR 99.) The ALJ also found in the alternative at step five that there were other jobs in the national economy that Plaintiff was also able to perform: small products assembler, inspector, or marker. (AR 99-100.)

## IV.   SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; *see also* 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings. 42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted); *see also Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir 2021) ("To determine whether substantial evidence supports the ALJ's determination, we must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion.") (citing *Mayes v. Massanari*, 276 F.3d 453 459 (9th Cir. 2001)). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## V.     DISCUSSION

Plaintiff argues the ALJ failed to provide legally sufficient rationale for rejecting Plaintiff's symptom testimony and the absence of an articulated rationale is itself legal error, warranting remand. (ECF 21 at 9.) Plaintiff acknowledges the ALJ's enumerated reasons, but argues that none of them meet the clear and convincing standard, in part because the ALJ failed to connect the testimony or allegations he found not credible to the part of the record supporting the non-credibility determination. (ECF 21 at 9, 13-16.) More specifically, Plaintiff challenges: (1) the ALJ's reliance on Plaintiff's daily activities (ECF 21 at 10-14); (2) the ALJ's reliance solely on the objective medical evidence without connecting any of it to Plaintiff's testimony (ECF 21 at 14-16); (3) seeming to characterize Plaintiff's treatment as routine or conservative when it was not (ECF 21 at 16); and (4) finding Plaintiff not credible because a one-time examining physician noted Plaintiff drove to an examination (ECF 21 at 16-17). Defendant argues the ALJ provided numerous proper reasons for discounting Plaintiff's testimony. (ECF 21 at 19-25.) Defendant points to the ALJ's reliance on controlled hypertension and depression and anxiety not lasting more than twelve months (ECF 21 at 21-22); objective medical evidence (ECF 21 at 23); conservative treatment (ECF 21 at 23-24); lack of medical opinions further restricting Plaintiff (ECF 21 at 24); Plaintiff's daily activities (ECF 21 at 24-25); and Plaintiff's statements about driving (ECF 21 at 22-23).

### A.     Applicable Legal Standard

When evaluating a Plaintiff's impairment-related symptoms, ALJ's must follow a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) ("We have established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."); *Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); 20 C.F.R. § 404.1529 (Describing how the Commissioner evaluates symptoms); *see also* SSR 16-3p, 2017 WL 5180304, at *2-3 (Detailing the Commissioner's two-step process for evaluating symptoms).

At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 871 F.3d at 678; SSR 16-3p, 20017 WL 5180304, at \*3.

When the claimant satisfies the first step and there is no determination of malingering by the ALJ, at the second step, "the ALJ must provide 'specific, clear, and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021); *Garrison*, 759 F.3d at 1014-15; *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (citations omitted). The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

### B.    Analysis

The ALJ found that Plaintiff satisfied the first step. (AR 98 (Finding "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms").) Having found Plaintiff's impairments could be expected to cause the alleged symptoms, the only issue raised is whether the ALJ provided specific clear and convincing reasons for rejecting Plaintiff's testimony or allegations as to the severity of those symptoms.

As summarized above, Plaintiff raises several challenges to the ALJ's decision. Each of those issues is addressed further and individually below along with Defendant's arguments. However, there is an overarching problem Plaintiff raises as to multiple reasons given by the ALJ—that the ALJ failed to connect the reasons given or evidence relied on to Plaintiff's testimony or symptom allegations.

### 1.    Identification of Testimony and Evidence Undermining

To meet the clear and convincing standard, the Ninth Circuit "require[s] the ALJ to specifically identify the testimony from a claimant [the ALJ] finds not to be credible and .

. . . explain what evidence undermines this testimony."[6] *Treichler*, 775 F.3d at 1102; *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) ("the ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Vasquez v. Astrue,* 572 F.3d 586, 592 (9th Cir.2009) ("[T]he ALJ [is] required to point to specific facts in the record.") (emphasis added) (internal quotation marks omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Here, the ALJ has not identified the testimony or allegations he is finding not credible or connected his reasons for discounting Plaintiff's symptoms to any testimony or allegations. As summarized above (section III.C), after stating Plaintiff's RFC, the ALJ indicates generally that he "has considered all Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"(AR 93), but does not identify what symptoms he is

---

[6] The Court notes that some cases articulating the analysis under the second step use the term credibility, and SSR 16-3p explicitly removed the term "credibility" from the Commissioner's sub-regulatory policy. However, the Ninth Circuit has explained that SSR 16-3p "makes clear what our precedent already require: the assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16-3p). Regardless of the use of the term credibility, the Court's application of Ninth Circuit authority here is consistent with *Trevizo's* explanation of credibility and SSR 16-3p.

referring to or explain how they are consistent or inconsistent with the medical evidence or other evidence.

The decision then acknowledges the two-step process noted above to evaluate a claimant's symptoms (AR 93-94) and summarizes some of Plaintiff's medical history and Plaintiff's Adult Function Reports. (AR 94-96; *see also* section III.C.) These summaries do not constitute clear and convincing reasons. "[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert*, 980 F.3d at 1278 ("Although the ALJ did provide a relatively detailed overview of Lambert's medical history, 'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'") (quoting *Brown-Hunter v. Colvin*, 806 F.3d a478, 494 (9th Cir. 2015) (emphasis in original). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter*, 806 F.3d at 489. The Court notes that some of the summaries emphasize positive or normal findings and note some of Plaintiff's reports to her physicians at these appointments, however, there is no connection between these summaries and Plaintiff's symptoms as required to meet the clear and convincing standard. The ALJ does not identify any testimony or allegations he is finding not credible or the evidence undermining it within these summaries. *See Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.").

After the summaries, the ALJ states he has "considered the allegations of her symptoms and functional limitations, . . . [h]owever, to the extent that it is alleged that the claimant cannot perform work at the residual functional capacity recited above, the Administrative Law Judge finds those allegations are not totally consistent with the evidence for the following specific and legitimate reasons." (AR 97.) The language itself

is deficient because the ALJ is essentially rejecting the Plaintiff's symptom allegations to the extent that are not consistent with the ALJ's RFC. Courts have characterized this as "a backward approach" because "an ALJ must take into account a claimant's symptom testimony when determining the RFC." *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) (ALJ "found that [plaintiff's] testimony was not credible 'to the extent it was inconsistent with the . . . RFC.") (citing *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) and *Trevizo*, 862, F.3d at 1000 n.6). "To determine the RFC *first* and *then* assess the claimant's testimony is to 'put the cart before the horse.'" *Id.* (citing *Laborin*, 867 F.3d at 1154) (emphasis in original); *see also Eldridge v. Berryhill*, Case No. 17-cv-497-JLA-BLM, 2018 WL 2357147, at *11 (S.D. Cal. May 23, 2018) ("The ALJ's focus on the connection between the medical evidence and the RFC, instead of Plaintiff's testimony, failed to provide specific, clear, and convincing reasons for disbelieving specific statements from Plaintiff's testimony.").

The ALJ does go on to list reasons, however, none of them are connected to any symptom testimony or allegations by Plaintiff. (AR 97-98.) The closest connection in the reasons listed are three statements that vaguely refer to not having a "disabling level of impairment," "impairments likely to produce disabling pain or other limitations," and "no treating or examining source medical statements . . . further restrict the claimant's functional limitations." ((AR 97 (ALJ indicates some daily activities "do not indicate a disabling level of impairment of the claimant's residual functional capacity"); AR 98 ("the objective evidence of the claimant's medical record does not establish impairments likely to produce disabling pain or other limitations as alleged").) However, even assuming the reasons given support those vague conclusions, the ALJ has not connected them to any allegations or testimony. A generic reference to "complaints of disabling symptoms and limitations . . . [does] not specifically identify the statements . . . the ALJ [is] discrediting." *Isis A. v. Saul*, Case No. 18cv01728-W-MSB, 2019 WL 3554969, at *5 (S.D. Cal. Aug. 2, 2019).

The ALJ then concludes "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 98.) However, because the ALJ has not identified the symptoms he is referring to or explained how they are inconsistent with the evidence, the ALJ has failed to "identify the specific testimony that he discredited and explain the evidence undermining it." *Lambert*, 980 F.3d at 1268; *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

The Court recognizes that ALJs are not "require[d] . . . to perform a line-by-line exegesis of the claimant's testimony . . . [or] draft dissertations when denying benefits," but here the closet the ALJ gets to identifying the testimony he is rejecting is vague references to "disabling limitations," and the decision provides no link between the reasons and any symptom allegations or testimony. *See Lambert*, 980 F.3d at 1277(citing *Treichler*, 775 F.3d at 1103). The ALJ's findings are not "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Thomas*, 278 F.3d at 958.

## 2.   Daily Activities

An "ALJ [is] permitted to consider daily living activities in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Daily activities "form the basis for an adverse credibility determination" when: (1) the daily activities meet the threshold for transferable work skills or (2) the daily activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Trevizo*, 871 F.3d at 682.

Plaintiff argues the ALJ simply identifies some activities without any explanation how they demonstrate the ability to perform work and even the activities identified are mischaracterized. (ECF 21 at 10-12.) Plaintiff also argues the activities cited by the ALJ

are not so extensive on their own to undermine Plaintiff's testimony without explanation from the ALJ, and the ALJ does not explain how these daily activities are inconsistent with Plaintiff's testimony or claimed disability. (ECF 21 at 12-3.) Plaintiff argues this lack of connection between the testimony and the portions of the record relied on by the ALJ prevent the Court from determining whether the decision is supported by substantial evidence. (ECF 21 at 13 (citing *Brown-Hunter*, 806 F.3d at 494).) Defendant argues the ALJ properly relied on Plaintiff's daily activities because they suggested she could perform basic tasks and had no more than mild limitations in adapting and managing her anxiety and depression. (ECF 21 at 24-25.)

The ALJ made no findings indicating the identified activities met the threshold for transferable work skills and Defendant does not advance that as a basis for an adverse credibility determination. The issue then is whether the ALJ found Plaintiff's daily activities contradict her testimony or symptom allegations. The ALJ did not.

Citing Plaintiff's Adult Function Reports, the ALJ's first reason listed in the decision states Plaintiff's "activities of daily living include[:] independently caring for her own personal hygiene; performing light household chores, such as keeping her room clean; performing her own laundry duties; shopping in stores for groceries and personal items and driving a vehicle." (AR 97.) The ALJ then concludes "[t]hese activities do not indicate a disabling level of impairment of the claimant's residual functional capacity." (AR 97.)

The Court agrees that the ALJ's characterization of the some of these activities may not be completely accurate in that they do not acknowledge the infrequency of them or other limitations that might paint a different picture of Plaintiff's abilities. *See Cobb v. Colvin*, No. CV 14-0655 RNB, 2014 WL 5659414, at *2 (C.D. Cal. Nov. 4, 2014) (Finding ALJ's reasoning legally insufficient when ALJ "ignored the full context of plaintiff's statements about his daily activities, which indicated that he performed them on a limited basis with help and rest.") For example, "shopping in stores for groceries and personal items" does not acknowledge that one of the reports the ALJ cites also indicates

as to shopping "I don't really shop, my friend . . . once a month takes me to get free food" and she only shops once a month. (AR 473, 499; *see also* AR 498 (laundry only done twice a month).) However, the ALJ's statements are not completely wrong except as the statement that she drives with citation to these two reports. Both reports cited indicate she does not drive. (AR 473, 499.)

Even assuming the ALJ's characterization are accurate, the greater issue is that the ALJ does not explain how any of these activities, even as favorably stated, are inconsistent with Plaintiff's testimony or allegations. And Plaintiff accurately notes that none of them are so demanding that they obviously undermine Plaintiff's testimony without some explanation from the ALJ. The ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct concerning the nature, severity and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Garrison*, 759 F.3d at 1015-16; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Our examination of the record shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that Claimant exaggerated her symptoms."); (citation omitted). But here, the ALJ has not explained how the identified activities undermine Plaintiff's testimony. Even if the ALJ's characterizations of the activities are accurate, the Court cannot determine if they are inconsistent with Plaintiff's claims because the ALJ has not connected them to any testimony or allegations by Plaintiff.

### 3. Objective Medical Evidence

Inconsistency with objective medical evidence is a clear and convincing reason to discredit claimant testimony. *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). However, the ALJ cannot reject a claimant's testimony regarding the severity of their symptoms solely because the objective medical evidence does not support it. *Reddick*, 157 F.3d at 722 ("Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because

they are unsupported by objective medical evidence."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work *solely* because the available objective medical evidence does not substantiate your statements.") (emphasis added); SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.") (emphasis added). There must be other clear and convincing reasons for rejecting Plaintiff's symptom testimony.

Plaintiff argues the ALJ erred in the second and fourth through ninth reasons listed by the ALJ because the ALJ is not permitted to rely solely on the objective medical evidence and the ALJ never connects any of these reasons to Plaintiff's testimony or allegations regarding her symptoms. (ECF 21 at 14-16.) Defendant relies on the ALJ's findings, summarized above, that Plaintiff's hypertension was controlled and her depression and anxiety were not likely to last more than twelve months. (ECF 21 at 21-22.)

Defendant also argues the ALJ permissibly relied on objective medical evidence, including full range of motion in her knee, reduced range of back motion with tenderness, some improvement with treatment, and not following up with an orthopedic surgeon. (ECF 21 at 23.) Defendant argues "[a]t one point Plaintiff even reported 50-80% reduction in her pain with radiofrequency ablation of the lumbar spine." (ECF 21 at 23.) However, Defendant fails to acknowledge that improvement lasted less than a month as to one and a little more than a month as to the other before pain flared up, and the physical examination following "revealed decreased range of motion of the spine and tenderness over the lumbar vertebra." (AR 96 (ALJ summarizing lumbar injections and radio frequency ablations).)

The ALJ's reasons two and the fourth through ninth can be summarized as follows: (second) Plaintiff denied anxiety and depression and had normal mood and affect at

cardiology appointment; (fourth) anxiety and depression would not meet the 12-month duration requirements; (fifth) blood pressure controlled; (sixth) echocardiogram showed normal ejection fraction, no evidence of ischemia or inducible arrhythmia and no stenosis on carotid ultrasound; (seventh) hypertension controlled; (eighth) lack of follow-up treatment with orthopedic surgeon as to knee; and (ninth) objective medical evidence does not establish impairments likely to produce "disabling pain or other limitations as alleged for any period of 12 or more continuous months."

Here again, the issue is not that these reasons could not undermine or be inconsistent with Plaintiff's claims regarding the severity of her symptoms. The problem is that ALJ does not connect any of this objective medical evidence to Plaintiff's symptoms, even generally, and certainly not specifically. The Court would agree that the ALJ identified objective medical evidence suggesting that Plaintiff's hypertension is under control and that her anxiety and depression, while certainly diagnosed, do not appear to be likely to last a long period of time. However, it is not clear how that evidence undermines Plaintiff's testimony. Even if the Court considers her denial of anxiety and depression at a follow-up cardiology appointment as establishing that her anxiety and depression are improved or even resolved, there is still no link or explanation how that evidence is inconsistent with or contradictory to Plaintiff's testimony or allegations regarding her symptoms. Similarly, not following up with this orthopedic surgeon regarding her knee might be inconsistent with her symptom allegations, although this is even a bit unclear from the ALJ decision given the number of orthopedic surgeons she was seeing. However, regardless, the ALJ does not provide the required link between the testimony he is finding not credible and the evidence he asserts, without explanation, undermines Plaintiff's complaints. *See Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.")

### 4.  Conservative Treatment

Conservative treatment can be a basis for discounting a Plaintiff's symptom testimony. *Parra*, 481 F.3d at 751 (finding use of only over-the-counter medication to treat pain was conservative treatment the ALJ could rely on to discount Plaintiff's claims regarding the severity of her pain). However, here, it does not appear Plaintiff's treatment was conservative and even if it was, it is again not clear what symptom testimony or allegations that would undermine.

Plaintiff argues the ALJ does not cite any medical evidence that Plaintiff's treatment has been conservative or routine. (ECF 21 at 16 (citing AR 98 and Reason Eight).) Plaintiff asserts that surgery and injections for pain are not conservative treatment. (ECF 21 at 16 (citing *Revels*, 874 F.3d at 667 and *Garrison*, 759 F.3d at 1015 n.20). Defendant argues an ALJ may rely on conservative treatment to discount a plaintiff's testimony regarding the severity of an impairment, and asserts the ALJ's description of Plaintiff's treatment as "mostly conservative" is accurate because there are references to physical therapy, cortisone injections, and "operative alternatives" in the record. (ECF 21 at 23-24 (citing *Parra* , 481 F.3d at 751.) Defendant does not address Plaintiff's assertion that surgery and injections are not conservative treatment.

While the Court would agree that some of Plaintiff's treatment was conservative, including the physical therapy noted by Defendant, other treatments were not, including the lumbar injections and potentially the radio frequency ablations, although the parties largely do not address these ablations. *Revels*, 874 F.3d at 667 (finding epidural injections to neck and back, among others, not conservative); *Garrison*, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as "conservative" medical treatment.").

Additionally, the ALJ does not provide any explanation indicating why or what testimony he would discount on the basis that Plaintiff's treatment "has been mostly conservative." (AR 98.) There is no explanation what treatment he considers conservative, and there is no explanation how any particular treatment or treatments are

19

inconsistent with or undermine Plaintiff's testimony or allegations. Again, the ALJ's analysis lacks the required link between medical records or findings based on them, like conservative treatment, and Plaintiff's testimony. The most specific explanation from the ALJ is that the lack of follow-up with a particular orthopedic surgeon was not consistent with "a disabling level of knee pain." (AR 98 (Eighth Reason). However, what constitutes "a disabling level of knee pain" and how that undermines Plaintiff's testimony or allegations is still not explained. Even if the Court assumes surgery, injections, and radiofrequency ablations are conservative treatment, the required link between this evidence and how in undermines Plaintiff's testimony is lacking. A generic reference to "complaints of disabling symptoms and limitations . . . [does] not specifically identify the statements . . . the ALJ [is] discrediting." *Isis A.*, 2019 WL 3554969, at *5.

### 5. Driving

Defendant argues the ALJ reasonably found contradictions regarding Plaintiff's driving called into question the veracity of all Plaintiff's statements. (ECF 21 at 22-23.) There are at least three problems here.

As an initial matter, Defendant's argument is an attempt to add a ground, albeit related, that the ALJ did not rely on. *Garrison*, 759 F.3d at 1010 (Finding the court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). The ALJ called into question the veracity of all Plaintiff's statements because the July 1, 2019 evaluation report indicated Plaintiff "had driven her own vehicle to the evaluation," but she indicated in adult function reports completed two months prior that she did not drive. (AR 97.) The ALJ does not cite the record in his decision, but the report from the evaluation on the date referenced states Plaintiff "stated she drove her own vehicle to the appointment." (AR 833.) Defendant cites and quotes from a different portion of this report that indicates Plaintiff's "activities included operat[ing] her own motor vehicle for transportation" and argues "[t]his suggested that her driving to the appointment was not an isolated activity despite her contradictory statements." (ECF 21 at 22 (quoting AR 835). The ALJ relied

on a single instance of Plaintiff driving to an evaluation to question the veracity of all her statements while Defendant is relying on a broader statement and arguing it was not an isolated instance. While these reasons both concern driving, they are not the same and the Court cannot affirm the ALJ on a ground he did not rely on. *See Garrison*, 759 F.3d at 1010.

Additionally, Plaintiff accurately points out that the ALJ relied on a single instance where Plaintiff was reported to have driven without any discussion of the evidence in the record that she was driven to numerous other appointments by someone. (ECF 21 at 16-17 (citing AR 855, 861, 863).) ALJs are permitted to weigh evidence and make findings in assessing the credibility of a claimant's testimony. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (1984). However, they cannot justify a conclusion by ignoring competent evidence, particularly without any explanation. *Id.*; *see Diedrich v. Berryhill*, 874 F.3d 634, 642-43 (9th Cir. 2017) (ALJ noted certain activities the claimant could do, but impermissibly ignored other evidence). The Court recognizes this is not an instance where an ALJ has ignored a mountain of evidence to the contrary to reach a preferred conclusion. Rather, the ALJ has relied on one note indicating she says she drove to the appointment and there are at least three in which she is noted to have a driver. (AR 833 (drove), 855 (had driver), 861 (had driver), 863 (had driver).) However, it is how extreme his conclusion is without any discussion that is problematic. The ALJ has questioned the veracity of *all* Plaintiff's statements, without identifying any of them, based on one instance of driving to one appointment without any discussion of or even acknowledgment of other records to the contrary. This is particularly concerning in this case because, as discussed above, the ALJ has otherwise not connected the evidence in the record to Plaintiff's testimony and only barely does here by reference to her adult function reports.

Additionally, questioning "the veracity of all of [Plaintiff's] statements" based on a single note seems more aligned with Plaintiff's "apparent truthfulness" than "evaluat[ing the intensity and persistence of symptoms and this is not permissible. The Ninth Circuit

has explained in addressing the removal of "credibility" from the regulatory guidance, that SSR 16-3p "makes clear what our precedent already require: the assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of *symptoms* after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," not to delve into wide-ranging scrutiny of the claimant's character and *apparent truthfulness*." *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16-3p) (emphasis added). Although the ability to drive or not drive might provide an indicator as the severity of symptoms, like the other reasons discussed above, the ALJ has not connected this conclusion to any symptoms and appears to be discounting unspecified testimony based on untruthfulness.

The Court finds the ALJ failed to provide specific clear and convincing reasons for rejecting Plaintiff's symptom testimony or allegations.

### 6. Harmless Error and Remand

When, as here, the ALJ has erred, the Court must consider whether the error was harmless. "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate non-disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (An ALJ's reliance on erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence"). However, "where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Marsh*, 792 F.3d at 1173.

Here, as discussed above, the ALJ's findings are not "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Thomas*, 278 F.3d at 958. More specifically, the decision does not explain how the reasons cited undermine unidentified testimony. This lack of connection between the ALJ's cited reasons and any testimony throughout the decision not only fall short of

the clear and convincing standard, but also preclude the Court from finding this error harmless.

However, the Court find's remand of the case is required rather than an award of benefits. "The rare circumstances that result in a direct award of benefits are not present in this case." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1099). The credit-as-true analysis "permits, but does not require, a direct award of benefits on review but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful." *Id.* at 1044.

The Court need not address each step of the three-part analysis because here there are "outstanding issues on which further proceedings in the administrative court would be useful." *Id.* At the second step, the Court considers "whether there are 'outstanding issues that must be resolved before a disability determination can be made' and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1104–05. "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105. As discussed above, the ALJ erred in evaluating Plaintiff's symptom testimony, and the ALJ's erroneous findings are inadequate, but the primary issue is the failure to explain how the evidence relied on undermines Plaintiff's testimony. That could potentially be rectified through further administrative review, making remand appropriate in this case.

///

///

## VI.   CONCLUSION

The Court **RECOMMENDS** this case be **REMANDED** to the Social Security Administration for further proceedings for the reasons set forth above.

**IT IS ORDERED** that no later than **January 9, 2023**, any party to this action may file written objections with the Court and serve a copy to all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that the reply to the objections shall be filed with the Court and served on all parties no later than **January 23, 2023**.

Dated:  December 19, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge